SMS: 2008R00424

FILED ENTERED
LODGED RECEIVED

FEB 25 2009

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. AMD-09-094 |
| | * | Mail Fraud, ( 18 U.S.C. § 1341); |
| DEBORAH WILLIAMS | * | Forfeiture |
| | * | |
| Defendant | * | |
| | * | |

*******

## INDICTMENT

## COUNT ONE

The Grand Jury for the District of Maryland charges that:

### Background

1. Day Title, Incorporated ("Day Title") was a title insurance agency that conducted residential and commercial real estate closings and issued title insurance policies as an agent of the Security Title Guarantee Corporation of Baltimore ("Security Title").

2. Day Title was owned by the Defendant, **Deborah Williams**, who was the sole officer and director of the corporation, and maintained the principal place of business at an office located at 160 Ritchie Highway, Suite 12A, Severna Park, Maryland 21146.

3. The function of a real estate settlement or closing is to effectuate the transfer of legal title from the seller to the purchaser of a property. In addition to the buyer and seller, or their representatives, a typical real estate closing involves the interests of a lender which is funding a portion of the purchase price through a mortgage loan to the buyer and those entities who have claims or liens on the real estate being sold, especially the entity or entities that had previously

loaned money to the seller and have liens on the property securing these loans.

4. A title company such as Day Title closes the real estate transaction by collecting funds from the buyer and buyer's lender and disbursing these funds first to any persons that have liens on the real estate and then to the owner-seller of the property.

5. Once the title company disburses the funds in accordance with instructions it receives from the buyer's lender, it mails the settlement statement, known as a "HUD-1" to the lender who had funded or underwritten the real estate transaction.

6. The HUD-1 is signed by the buyer, the seller, and the title company's closing agent all of whom attest that it is an accurate statement of the financial transaction. The HUD-1 is a written confirmation that the funds were properly disbursed in strict accordance with the lender's instructions, that the entities which had liens or proper claims on the property were paid off, and that the new lender's mortgage is properly recorded so that its loan is properly secured by the real property.

7. Day Title routinely mailed the completed HUD-1 by United Parcel Service ("UPS"), a commercial interstate carrier, to the lender that had funded the buyer's purchase of the real estate.

8. In addition to serving as a settlement company closing real estate transactions, Day Title also acted as an agent for Security Title and sold a title insurance policy for the benefit of the buyer and the buyer's lender that insured that clear or valid title was being transferred from the previous owner free of any prior liens.

9. A title company maintains an escrow account to hold those funds it collects from the buyer and the buyer's lender until the closing agent disburses the funds at settlement when the real estate sale is consummated, and the buyer takes title to the property. The disbursement of these

escrow funds is restricted to the persons or entities that have legitimate claims on the real estate and are specifically identified in the HUD-1 settlement statement.

10. The Defendant, **Deborah Williams**, the owner and operator of Day Title, maintained two bank accounts at Provident Bank of Maryland: an escrow account for the receipt and disbursement of funds in connection with real estate closings, and an operating account that was used to receive fees and premiums it earned in connection with real estate closings and to pay Day Title's expenses, including employees' salaries and overhead.

11. The Defendant, **Deborah Williams**, had signature authority over the two Provident Bank accounts. The Defendant, through Provident Bank, set up an online banking capability with the escrow account that allowed the Defendant through an office computer to initiate wire transfers out of the escrow account and to stop payments of checks that were drawn on the escrow account.

12. Day Title also employed a computerized software program known as Landtech that kept track of the receipts and disbursements of all escrow account monies in each real estate transaction. In addition to recording each financial event, Landtech had the capability of printing out each disbursement check in a real estate closing.

### THE SCHEME

13. From at least on or about April 14, 2005, and continuing to on or about May 8, 2008, the Defendant, **Deborah Williams,** devised and intended to devise a scheme and artifice to defraud various mortgage banks and lenders of money and property in the amount of $3.4 million, more or less, by wrongfully transferring money out of the escrow account to use for her own personal benefit or the benefit of others, which illegal transfers she concealed by making material false representations in HUD-1 settlement statements that her company Day Title had paid off lien holders

3

who had claims against the real property that was the subject of the settlement closing when, the

Defendant, **Deborah Williams**, in fact, either initiated stop payments of payoff checks that had been

disbursed or intentionally failed to mail the payoff checks to the lien holder.

14. Mortgage companies that fund real estate purchases rely on the representations made in

the HUD-1 settlement statement that prior lien holders have been paid off.

15. A mortgage company or financial institution that has a lien on real estate looks to its

debtor to continue making payments on the obligation secured by the real estate.  The seller in the

real estate transaction closed by Day Title had no reason to suspect that the representations in the

HUD-1, i.e. that the seller's mortgage or liens have been paid off, were not carried out.

16. The scheme was not uncovered until the seller received late payment notices from the

entity holding the mortgage or lien on the seller's property. These delinquency notices often took

several months before the seller was alerted to the situation.  The time delay between the settlement

date and the time when Day Title was required to rectify its failure to make the proper pay offs

allowed the Defendant, **Deborah Williams,** to replenish the escrow account with proceeds from new

real estate settlements.

## EXECUTION OF THE SCHEME

17. On or about February 1, 2008, in the District of Maryland, the Defendant,

## DEBORAH WILLIAMS,

for the purpose of executing and attempting to execute the scheme and artifice to defraud, did

knowingly cause to be placed with an interstate carrier, namely UPS, an envelope containing a

materially fraudulent and misleading  HUD-1 settlement statement pertaining to 1876 Eagle Court,

Severn, Maryland 21144, with instructions that it be delivered to Southern Mortgage Trust Company,

150 Boush Street, Norfolk, Virginia 23510.

## COUNTS TWO THROUGH FIFTEEN

The Grand Jury for the District of Maryland further charges:

1. The allegations contained in paragraphs 1 through 16 of Count One are incorporated herein.

2. On or about the date listed below, in the District of Maryland, the Defendant,

### DEBORAH WILLIAMS,

for the purpose of executing and attempting to execute the scheme and artifice to defraud, did knowingly cause to be placed with an interstate carrier, namely UPS, an envelope containing materially fraudulent and misleading HUD-1 settlement statement pertaining to the real estate described in the table below, to the recipient lender at the address set forth in the table below:

| COUNT | REAL ESTATE | NAME OF LENDER | ADDRESS | DATE |
|---|---|---|---|---|
| 2 | 346 Sturtons Lane Pasadena MD 21122 | Suntrust Mortgage | 1001 Semmes Ave. Richmond, VA 23224 | 2/22/08 |
| 3 | 1702 Lansing Rd. Glen Burnie MD 21060 | Southern Trust Mortgage | 159 Boush St. Norfolk, VA 23510 | 3/14/08 |
| 4 | 916 Chestnut Woods Ct. Baltimore MD 21226 | C&F Mortgage Corp. | 1400 Alverser Dr. Midlothian, VA 23113 | 3/19/08 |
| 5 | 931 Langley Rd. Glen Burnie MD 21060 | Country Wide Bank | 525 Lincoln Dr. Marlton, NJ 07053 | 3/25/08 |
| 6 | 102 Sycamore Rd. Linthicum MD 21090 | Metrocities Mortgage | 15301 Ventura Blvd., Sherman Oaks, CA 91403 | 4/01/08 |
| 7 | 15913 Alameda Dr. Bowie MD 20716 | JP Morgan Chase | 3190 Fairview Park Dr Falls Church, VA 22042 | 4/02/08 |
| 8 | 64 Dividing Creek Arnold MD 21012 | HCI Mortgage | 473 Easton Pike Lake Ariel, PA 18436 | 4/14/08 |
| 9 | 262 Ullman Rd. Pasadena MD 21122 | Countrywide FSB | 6711 Columbia Gateway Dr. Columbia, MD 21046 | 4/16/08 |

| 10 | 210 Copperwood Dr. Millersville MD 21108 | Wells Fargo Bank | 2701 Wells Fargo Way Minneapolis, MN 55467 | 4/28/08 |
|----|------------------------------------------|------------------|--------------------------------------------|---------|
| 11 | 8212 Champion Ct. Pasadena MD 21122 | Arundel Federal Bank | 33 East Patapsco St. Baltimore, MD 21225 | 4/30/08 |
| 12 | 4307 Meadow Mills Rd Owings Mills MD 21117. | Indymac Bank | 3465 East Foothill Blvd. Pasadena, CA 91107 | 4/30/08 |
| 13 | 612 Marlboro Rd. Glen Burnie MD 21061 | BB&T Bank | 301 College St. Greenville, SC  29601 | 5/05/08 |
| 14 | 5104 Brookwood Rd. Brooklyn MD 21225 | Wells Fargo | 2701 Wells Fargo Way Minneapolis, MN 55467 | 5/10/08 |
| 15 | 6217 Gilston Rd. Baltimore MD 21228 | Sierra Pacific Mortgage Company | 5151 Beltline Rd. Dallas, TX 75254 | 5/16/08 |

18 U.S.C. § 1341

## FORFEITURE

1. The allegations contained in Counts One through Fifteen are realleged and incorporated here for the purpose of alleging forfeiture.

2. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the Defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 28, United States Code, Section 2461(c), in the event of the Defendant's conviction under Counts One through Fifteen of the Indictment.

3. As a result of the offenses set forth in Counts One through Fifteen, the Defendant,

**DEBORAH WILLIAMS,**

shall forfeit to the United States any and all property constituting, or derived from proceeds obtained directly or indirectly as a result of such violations, including $3.4 million and all interest and proceeds traceable thereto, which forfeiture is based on the following:

At least $3.4 million being the amount that Deborah Williams failed to pay over to lenders as a part of her scheme to defraud, and which she misapplied for her own benefit and the benefit of others.

## SUBSTITUTE ASSETS

4. If any of the $3.4 million, more or less, described above as being subject to forfeiture, as a result of the act or omission of the Defendant,

**DEBORAH WILLIAMS,**

(a) cannot be located upon the exercise of diligence;

(b) has been transferred, or sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the Court;

8

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the Defendant,

**DEBORAH WILLIAMS,**

up to the value of the property charged with the forfeiture above.

18 U.S.C. § 981 (a)(1)(C)
18 U.S.C. § 1956 (c)(7)
18 U.S.C. § 1961(1)
21 U.S.C. § 853

Rod J. Rosenstein /sms
Rod J. Rosenstein
United States Attorney

SIGNATURE REDACTED

Foreperson

25 FEB 2009

Date

9